Good morning, everyone. The first argued case this morning is number 2009-5031, Dominion Resources against the United States. Mr. Lester. May it please the Court. Your Honor, there are, of the $156 million judgment that the trial court entered against the United States in this case, the United States is only appealing two discrete issues that we are asking this court to reconsider and reverse the trial court on. This is one of the least sloppy ones of these I've ever seen. Usually it's everything in the kitchen sink, so thank you for only appealing two issues. We're working to make them easier, Your Honor. With the court's help, we're trying to narrow down some of the issues. And this is a case where we have two issues that are in play in several of the cases, and guidance from the court here would be helpful to the trial court and the government and the parties. The first issue that we ask the court to reverse the court on is the issue of whether or not the plaintiff is entitled to maintain suit upon an assigned claim. Do you think there needs to be in the statute a separate line item in order to waive or to transfer, to be able to transfer liability for past claims? Yes, Your Honor, and we rely for that upon this court's decision in Ginsburg v. Austin, which quoted from and adopted the language of Williston on contracts, which is a- But you're saying that any language in this specific contract can't override this general principle? This is not the contract, Your Honor. There is a provision, as the court is aware, there are lots of cases that talk about the Assignment of Contracts Act and the Assignment of Claims Act, both of which preclude, and generally those two are talked about in court decisions together. They're rarely sort of segregated, but- Hold on, just to follow up on Judge Newman's question before you turn to the statute, you're not disputing that the contract language does convey the right to past claim suits? As between the buyer and seller, it's clear they intended to transfer that and did, right? That's not- In their private transaction- Right, you're just saying they didn't have the authority to do that vis-a-vis the statute. Right, we're disputing that the statute, the Nuclear Waste Policy Act, which does create an exception to the Assignment of Contracts Act, we're disputing that that also creates an exception to the Assignment of Claims Act. But you're not disputing, at least for purposes of this appeal, what the contract does. If we were to decide that the statute, in fact, allows the transfer of past damaged claims, part of this appeal does not include whether or not the contract itself, in fact, did transfer those rights. The contract with the government, Your Honor? No, the contract as between the buyer and the seller. No, we're not disputing that they purported to assign the claims at issue here. So you're saying that provision was illegal? Yes. We are saying that it was ineffective against the government. The private parties can do whatever they want between themselves. So you're saying there can be no transfer, such as this, of corporate assets at any time, anywhere in that provision? There can be a transfer of corporate assets. In fact, the contract here and the Nuclear Waste Policy Act contemplate that upon the sale of a nuclear reactor to a new party and the transfer of the spent nuclear fuel on that site, that there will be a transfer, an assignment of the contract. In fact, although the Assignment of Contracts Act generally bars the assignment of contracts, the Nuclear Waste Policy Act contains language that says that the rights and duties of a party to a contract under this section of the Nuclear Waste Policy Act may be assignable to the person that purchases it. You're asking us to invalidate that statute? No, we're not at all. We are totally on board with the idea that the contract can be assigned. The issue here is whether or not the pre-existing damages claims that had already accrued as of the date of the contract assignment also necessarily, pursuant to this statute language, also whether the government has waived sovereign immunity for the assignment of those claims. I just want to be sure. So you're saying all claims except damages can be transferred under these various statutes? The contract can be assigned. The pre-existing damages claims that had already become choses in action by the date of the contract assignment stay with the original contract holder. Does that mean the original contract holder would be able to sue the government on those claims? Yes, under the authority of Ginsburg v. Austin, that's exactly what happened. In Ginsburg v. Austin, there was a lease contract that was assigned to a new property owner, and there was a novation of the contract that government approved. The original property owner then sued the government for back rents that had accrued prior to the novation. And the government there argued that, in fact, all the claims had gone with the contract too. And this court, citing and quoting from Williston on contracts, said, no, and I'll quote, this court, quoting Williston, said, the assignment of rights under a continuing contract does not imply an assignment of rights for previous breaches of contract, meaning prior contract claims. The original contract holder maintains those claims because once they become perfected choses in action, they separate from the contract itself and become a property right. What you're reading about is interpretation of the contract, but you've already agreed that there's no dispute that in this contract, the seller did, in fact, intend to and did transfer the right to pass damages. Maybe I'm confused, Your Honor. There are two contracts that I'm thinking of. One is the contract between the government and the original contract holder, and the contract was assigned. There's no dispute about that. There is a contract between the original contract holder and the new contract holder, Dominion. Now, in that contract between those private parties, they purported to sign not just the contract but also preexisting damages claims. And we don't dispute that that language is in their private contract. We do dispute that in the government's contract with the original contract holder that's now been assigned to Dominion that we are somehow agreed to an assignment of claims. We agreed to, pursuant to the statute, an assignment of the contract. The issue here is just whether, well, does that contract language and the statutory language upon which it was based in the Nucleus Posse Act, does that encompass preexisting damages claims? We say under the authority of Ginsburg and Williston, which discusses well-settled contract law, that the statute says that the rights of a party to a contract may be assignable. Ginsburg says the assignment of rights under a continuing contract does not imply an assignment of those prior claims. Under the Assignment of Claims Act, Congress did create two separate statutes prior to the Nucleus Posse Act. One precluding the assignment of contracts. A separate one precluding the assignment of claims against the government. Clearly, Congress understood that there was a difference. Now, I know they get talked a lot together in Congress. may be assignable is so broad that it shows Congress's intent to encapsulate both continuing contract obligations and also rights for past suits or claims. That's the argument, as I understand it. That is their argument. But as this Court's well aware, I mean, this is a waiver of sovereign immunity. Those must be strictly construed in favor of the sovereign. And unequivocally, waivers must be unequivocally expressed. What if it said all rights and duties as opposed to the rights and duties? All rights and duties. Would that be unequivocal? Under Williston, Williston expressly states the assignment of rights under a continuing contract. Williston is the restatement of contract law, right? We're interpreting a statute. This Court adopted that in Ginsburg. And we're not saying that Williston interprets this contract, but it is instructive in terms of it's the same language. Ginsburg is an assignment of real property. That's the landlord case, right? That is true. But Williston, upon which it relies, is not. This is a contract we're interpreting. I don't think, I don't see how this panel, are you suggesting we are bound by Ginsburg because in a contract dispute over real property, they said they were going to interpret particular language of that contract in a certain way. And the fact that this statute has not the identical language, but similar language, that somehow Ginsburg is now binding on us in terms of statutory interpretation of somewhat different, not exactly the same language? Plainly, Ginsburg is not directly on point here. It's just persuasive authority. But Ginsburg did rely not on a property law treatise or a leasehold treatise. It relied on Williston, which is a treatise about general contract law. So it wasn't just discussing just leaseholds. But this is statutory interpretation. I'm still trying to figure out what Congress intended. It is. And there is no indication, I mean, in light of the fact that historically we have had a separate statute, one that deals with the assignment of contracts and precludes those, a separate one that precludes the assignment of claims, clearly Congress understood that there's a difference between the two and it has segregated them in its mind. Here, Congress did not say that it was, the NWPA does provide a limited waiver, a waiver on the assignment of contracts, so long as the contract is being assigned to someone who now owns the spent nuclear fuel. But the government's going to owe the money either way because it's the interim storage fees, building, for lack of a better word, the cesspool that holds these things, right, this nuclear waste. So we're talking about the government's going to pay whether it pays the prior owner, the guy who built it, or the current owner, the company that assumed the nuclear waste and is now in possession of the cesspool. So either way, the government owes this money. There's no, I mean, I know you dispute that you should get a credit for other stuff. But either way, the government has to pay these interim storage fees. What's the big deal if the people, if it's clear that the contracting party is intended to transfer the right so that you can't be double sued, then what's the big deal? Aside from the waiver of sovereign immunity issue, which, and the rules that apply to that, there are issues here with the way that the lower courts have been interpreting this assignment provision. They've interpreted it so broadly that not all rights and duties have to be assigned according to the court law. So the plaintiffs can sort of pick and choose what to assign. That wasn't decided in this case, right? No one decided that. There was no decision below that said the seller retained certain rights and the buyer got certain rights, but the buyer definitely got the right to sue. Although the assignment here did purport to do that, the original contract holder did retain claims relating to pre-1983. No lower court made any decision along this line that is before us to review, correct? Not in this case, no, Your Honor. I think we have to move on. Our time is exhausted. What is the second point, Mr. Rustin? The second issue that we ask the court to reverse on is whether or not the government can pursue a request to require an accounting of any benefit that the plaintiff received from being able to defer its substantial one-time fee payment that would have had to have been paid in 1998 in the but-for world. And does the government accept that if there is, instead of a gain or something equivalent to the interest that the government says it's entitled to, that the government would accept the losses that might be incurred by the contractor? No, Your Honor. We're not willing to step up to that. The issue here is whether or not, what is the benefit? And it seems most likely that the benefit is probably the opportunity benefit. But you're relying on the self-tellment where there were specific gains in a specific area of interest. But you're saying never mind if you invested in anything at all in the lottery? Well, one of the problems we have here is we have no idea what happened. We don't know if the plaintiff had money that it was ready to pay over the government and it has done something else with that money for the past 13 years. I don't understand the point. You say you're entitled to the gains, but you won't bear the losses? I'm not even saying we're necessarily entitled to the gains, Your Honor. We do need to look to see what happened here. But one possibility, as we discussed in a reply brief, is that what we're really talking about is an opportunity benefit, a time value of money issue. There is a gray area in case law about what is actually directly related to the breach and what is too remote to allow for recovery. Here, it does appear that the obligation on the plaintiff here, one of the main obligations was to pay money to the government. When the government provided a service, which it had not done. And we're not disputing this court's decision in Yankee that they don't have to pay that fee yet. But what we are saying is under the methodology that the court has identified in Yankee for how causation and damages are supposed to be calculated, what we do is we look at the but-for world, the costs that were incurred in the but-for world, what would have had to have been paid in the but-for world and compare it to what actually was paid. Here, in 1998, it's very clear and Yankee acknowledges that in 1998, the plaintiffs would have to have paid this one-time fee. Here, a fee of $82 million. Because of the delay, that does not have to have been paid. We are simply asking for the opportunity to take discovery and to argue before the trial court that in fact there is a benefit. Are you waiving the interest entitlement to that money? We are not. However, it may turn out following discovery that the interest that calculates on that money is, you know, there is no additional benefit beyond that. But isn't that dependent on the option that's taken on the payment on that? I'm sorry, Your Honor. Isn't that dependent on the option that's taken, whether it's option one, two, or three? Well, but in the but-for world, even under any option, the money would have had to have been paid by 1998. There's no question about that. Or at least assuming that fuel would have been taken from Dominion in 1998, it would have had to pay the fee. So basically what you're asking for is an opportunity cost loss. Basically, Your Honor, yes. To account for whatever benefit is directly related to the government's delay. We're not asking for remote costs. We're not asking for remote profits that might have been made. But we are asking for the opportunity to find out whether, I mean, the other possibility is that Dominion didn't actually have the money to pay and would have had to have taken a loan to do that. And it saved the financing costs for these past 13 years on the fee that it would have had to have paid. We don't know that because we weren't allowed to take discovery on this issue. We've exhausted your time. Thank you, Your Honor. We'll save you some time for rebuttal, Mr. Lester. Mr. Fagg. Thank you, Your Honor. May it please the Court. Brad Fagg for Appellee's Dominion. I'll start with the assignment issue. The language of the Nuclear Waste Policy Act allows for the assignment of rights and duties of a party to a contract. The right to pursue preexisting claims is nothing if not a right of a party to a contract. We do not believe, as set forth in our briefs, that the language of the Nuclear Waste Policy Act can be twisted and constrained and bent far enough to accommodate nuclear policy. Even for a claim which has not been reduced to judgment? Yes, Your Honor. Even for a claim that has not been reduced to judgment, the right to pursue and collect that claim can't be fairly, we would respectfully submit, characterized as anything other than a right of a party to a contract. How can you include that in the assignment if there's the non-assignment provision, which is the exception in the Nuclear Waste Program? The Nuclear Waste Policy Act is the language I've just been quoting, which waives, which allows, the assignment. There is an Assignment of Claims Act and an Assignment of Contracts Act. The government's argument, as I understand it, says that notwithstanding the language we think is quite clear, that somehow even more is required. You have to use the word claim or you have to cite the separate claims act or something along that line is what I understand the government's argument to be. I think the government's argument basically is that there are two assignments provisions under the government prior to the Nuclear Waste Act, right? One restricted the assignment of claims unless they were reduced to judgment or the assignment of responsibilities. Under the Nuclear Power Act, the Nuclear Waste Act, you have the ability to assign the contract. The question we have to decide, and I think it's not as clear as people try to make it, is whether or not the Power Act assignment provision includes claims, which have not been reduced to judgment. If I may, a couple of points in response to that, Your Honor. With respect, the Nuclear Waste Policy Act does not say you can assign the contract. If it did, we might have a different argument here. The Nuclear Waste Policy Act says you may assign, and I quote, the rights and duties of a party to a contract. Our position is that is sufficiently broad to cover the waiver of both acts, the Claims Act and the Assignment Act. But a second point I would like to make in response to that is both of these statutes have their origins in the mid-1800s. They're interchangeable. If you go back into the legislative history, the names change, the provisions change, there's overlapping. But what is clear is that both acts can be waived. And the types of waivers we've seen and the type of applications we've seen of that, for example, by operation of law, a merger or a bankruptcy, case after case after case, Tufco of this court, Supreme Court precedent, the Etna case, 338 U.S. 366 says that those can be waived by operation of law without the sort of heightened language the government's arguing for here, without the sort of, well, you have to say the claims are argued. Is there any case you can point to which had the language, the rights and duties of a contract that did allow the assignment of pre-existing claims? Not that specific. I couldn't find any, but I found lots of cases in state court and the restatement where it said the rights under a contract do not convey the right to pass damages. So I'm concerned. Well, let me, if I can, address that because I think that ties into our Ginsburg discussion. Okay. And all of the citation to Williston and this court's decision in the Ginsburg case all involved the intent of the parties. And that's what Ginsburg was all about. Did the right to pursue those pre-existing claims as a matter of the intent of the parties or the implications or the common law, the state law at issue there, apply for the concession here today and the facts are not disputed? The two private parties intended to convey this right. So the question then is with that clear intent, does the waiver of the Nuclear Waste Policy Act have to be more clear than it is? No, the question, counsel, is exactly the same. It's just you're looking at a different party's intent, right? The question to those cases is did the people writing those contracts intend to transfer rights for past claims? And here the question is did Congress intend to allow by the same language for the transfer of past claims? I mean, that's the issue. It's still one of looking at the intent of somebody that drafted this exact same language and figuring out whether this language should be construed as manifesting their intent to transfer past claims. So I think that the issue is awfully identical, at least analogous, if not identical. So tell me what about this language, rights and duties of a party to a contract, tells me Congress intended in that language to allow right parties as part of those rights and duties to transfer past claims, in light of all this case law that says that same language, if it appeared in a contract, wouldn't be enough. Well, again, and again, we haven't incited in the breeze or gone to the case law. I would suggest it's not quite as clear. I think the extensive discussion in the Ginsburg case illustrates that different states, different presumptions may, you know, there may not be as clear a landscape as the question suggests, but more to the point. But you don't have a single case that contradicts that landscape that I suggested might be clear. I don't have a case that either confirms or contradicts it, Your Honor. But what I do know is that it is hard for me to characterize, and with respect, I think hard to objectively characterize what was attempted to be transferred in this case, the right to pursue preexisting damages. Just using the English language, it's hard to characterize that as anything other than a right of a party to a contract. What else can it be? What could be the right of the party to have the government continue to enforce the contract? Why wouldn't it be the rights of the new buyer to force the government to perform under the contract, to ultimately take over this waste? Well, there could be all sorts of other rights. You just said you couldn't imagine what it could be other than the right to sue for past infringement. So I'm just suggesting that it seemed quite clear to me what else it could be. There could be other things, and I'm sorry I wasn't clear. What I am meaning to suggest is, is there another way to fairly characterize what was attempted to be assigned here, the right to pursue and recover these preexisting damages? Is there a way to say that's not a right to a party under contract? I would respectfully submit no. It is a right, a right to pursue breach of contract damages. I don't know how that can be, again, characterized. There may well be others, as Your Honor suggested. There may be other rights. There's all sorts of other rights to a contract, but this, with respect, is clearly a right under the contract. It could also be a right. Could it not be arising after the assignment of the contract? Well, again, there's all sorts of rights that it could be, but is this particular right we're talking about here, is that somehow not a right of a party under contract? I can't get there. I can't get there with the language that Congress used in the Nuclear Waste Policy Act. And again, as Judge Galliard said, as your prior question said, if they had just said contracts, okay, I think we would have a closer question here. But they didn't say that. They said rights and duties of a party to a contract. And so what the government is doing is taking their blue pencil out and marking that language out of the statute. And that's not a permissible, with respect, mode of how this court is to interpret the words of the Nuclear Waste Policy. The 900-pound gorilla in all of this is whether or not the sovereign immunity of the U.S. government was waived by that assignment. Well, again, I think the cloak of sovereign immunity that the government is trying to wrap itself here is not as absolute as the arguments would suggest. Again, as I talked about earlier, waivers by operation of law. Again, the case Insurance Company of the West, 243 F. 3rd, 1367, this court in 2001 said equitable subrogation claims. Okay, a party just stepping in, and there's a lot of case law in that area. There's no sovereign immunity issue there, as the West case holds. So, again, the number of cases Tufco cited in the briefs that say that implied waivers can occur, that, you know, the assignment of claims and the assignment of contracts acts. You know, in Tufco, the facts there, the contracting officer waived it. If this is sovereign immunity, you can't have some contracting officer waiving the sovereign immunity. So I would suggest that cloak of sovereign immunity is not as absolute as the government would have us believe with their arguments. I suppose the worst that can happen is that the prior party is joined to the suit if, in fact, the current owner is not the property. Well, in some circumstances, then, again, the prior party was named in a caption of this case. But, again, I don't think that's material for purposes of the issue currently before the court. It wasn't assigned and was pursued by Dominion. You know, but you would have timing issues now. I guarantee you if the prior owner, this transaction occurred well more than six years ago. If that prior owner tried to come in and pursue these claims now, I can imagine what my colleagues on the other side of the room would say about the timing of that sort of claim. But more to the point, again, again, getting back to the language of the Nuclear Waste Policy Act, that sort of raises, are there policy reasons for overriding that? I don't think you can say that there are here. You can't override the clear language with the policy. And the sort of parade of horribles that the government has alluded to in its briefs that we can't keep track of, you know, there's not that many of these contracts out there, these nuclear waste contracts. And the government knows exactly when they're assigned. There's a notice provision. This sort of notion of there's a multiplicity of people coming in and we don't know who has the contract rights, I would suggest respectfully is a red herring. They know exactly who has the contract rights. And the contract rights have to go with the fuel. If you read the whole clause, it's assignable with title to the spent nuclear fuel. So the policy arguments, again, A, don't override the statute, and B, we dispute the validity of the policy arguments. Is there anything in legislative history that would point to that? Point to, I'm sorry? A waiver of sovereign immunity for the prior claims? No. That language sort of just appeared, you know, and there wasn't any sort of debate, for example. There's no clear what about claims, nothing that would elucidate specifically that question. We couldn't find it, so I'm glad it's not there. I'm relieved because nor could I, Your Honor. I would like to spend just a couple of moments on the second issue in the case, on the one-time fee issue. As we laid out in our briefs, we do think the principles here are controlled by LaSalle and other authorities in this court. There's no substitute transaction here, as the trial court found, and we think that's dispositive. In LaSalle, there were two types of reductions of damages. Again, one was attributable to the substitute transaction. In that Windstar case, it was the recapitalization. That was appropriate, but LaSalle went on to very clearly state these other transactions, these separate collateral business undertakings, were not appropriate, and that's with respect to exactly what the government is urging here. It's investment or cost to borrow, all of these sorts of things that as a matter of law under LaSalle, the Hughes Communications case in this court and a number of other cases have said legally, as a matter of law, are too remote to be an appropriate basis for reduction. It doesn't matter, given what the market has done in recent years, if it would have been better had you paid the money because now you don't have it because you lost it. Should the government have to foot the loss? Well, I think you heard a very telling concession by counsel on that. They're not conceding that. They want to appropriate the gain, but they want to eschew the loss, and that destroys the contractual bargain. It destroys the symmetry of this. You know, the government says, we don't know what happened. Well, you don't get to take discovery on flawed legal theories. As a matter of law, in the Hughes Communications case, that was resolved on a motion in limine as a matter of law. As a matter of law, the allegations the government seeks to pursue here are too attenuated and too remote to support either discovery or continued litigation. And the final point, we just have to make clear, the government made this argument to this court in the Yank case. Now, we cited the portions of that in our brief. The court itself, again, it focused on the more immediate issues of, is the fee actually due at owing? The sort of economic benefit was an afterthought in that case, as it was in this case. But nevertheless, it was presented to this court, urged as a basis for reversal, and this court did not do it. So we have to raise the question of how many sort of bites at the apple is the government going to get on these one-time fee defenses? We would suggest it's high time to put an end to that. If there are no other questions. Any more questions for Mr. Fagg? Any more questions? Thank you, Mr. Fagg. Celestia, a couple of minutes. Very briefly, Your Honor, just to respond to specific points. First, as the court asked, what would be the purpose of the contract assignment, it is for future performance. And if claims arise in the future after a contract assignment is made, those claims would then become chosen in action that are owned by the person that had that contract at the time that they arose. The Tufco case from the prior president of this court talks about how the Assignment of Contracts Act looks forward. It looks about extratory contracts. It looks forward. The Assignment of Claims Act looks for claims for wrongs that are already done. That's the separation of the two. There's nothing in the statute here in the Nucleus Posse Act that somehow changes that differentiation. And the Plaintiffs' Council said that there aren't a lot of plaintiffs in these cases, there aren't a lot of contract holders, so it's not hard for the government to deal with these assignments because they're just so clear. But I will mention that in Joint Appendix page 1620 is the notice of assignment to the government in this case. And you'll see in that, and it's very similar in other cases, the letter doesn't actually mention the breakout of rights that in the private agreement the parties had. If you'll see in the private agreement, the original contract holder did purport to retain some claims relating to pre-1983 fuel. In the notice of assignment to the government, there's no mention of that. So sometimes there are these deals between the private parties who are finding that when we get the actual purchase and sale agreements, there are all kinds of nuances with regard to the assignments that the government's notice didn't actually provide any notice of. You know, Mr. Wester, this is a digression, but the standard contract was an act of Congress as well. It was included in legislation. And what struck me from the beginning, if in fact the idea was that as between owners of these facilities, if the ownership were to change, that this mention of rights and obligations could not also be transferred but essentially died, isn't there an obligation to put that in the standard contract? The obligation, I'm not sure I completely understand, Your Honor. I'm really trying to understand this possibility that there might be a change of ownership of nuclear power facilities over the future of the planet, or as long as this now is supposed to apply, must have been sufficiently close to the surface that it would have occurred if in fact any time that there was a transfer of ownership, past obligations or claims were obligations of the government under the standard contract to accept the waste would have been erased. Well, Your Honor, in fact, the statute itself, two responses. First, the contract does in fact contemplate the assignment of contracts and it includes, incorporates the contract assignment language. But precisely, if it were to erase the past obligation to accept the waste or bear the consequences, wouldn't that have been something obligatory to be included by the government when this legislation was enacted? In fact, Your Honor, the statute itself doesn't even appear to contemplate damages claims. In the section of the statute that deals, identifies the purposes of the statute, it expressly states that all costs of this entire program were supposed to be paid by the utilities. And as the 11th Circuit held in Alabama Power, in fact, the Department of Energy, the Nuclear Waste Fund, the monies that come, that apply to this program cannot be used to pay any damages. All the damages are being paid out of the judgment fund. They're not being paid out of any fund that has anything to do with this program. It doesn't appear that Congress even contemplated the possibility of damages claims. Therefore, there wasn't any kind of language in the statute that provided for the assignment of damages claims. Congress wasn't even contemplating that. Therefore, it couldn't have been waiver of sovereign immunity with regard to that. As I recall, no one contemplated that in whatever it was, 18 years that the government had, that they couldn't find a way to fulfill their obligations. Well, I don't want to step into that, Your Honor, but I will say only that Well, in terms of why perhaps it wasn't so specific. But only then that the statute itself does not contemplate that preexisting damages claims that had already accrued prior to a contract assignment would not go with the contract. I see that my time is out for these reasons. We ask the court to reverse on those two specific issues. Thank you, Mr. Lester and Mr. Fagg. The case is taken under submission.